## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **DIMITAR KOVACHEV,** **Individually and on behalf of all others similarly situated,** | Case No. 1:12-cv-09461 |
| **Plaintiff,** | Honorable John J. Tharp |
| v. | |
| **PIZZA HUT, INC., FRANCHISE MANAGEMENT, INC., and FRANCHISE MANAGEMENT INVESTORS US, LLC,** | |
| **Defendants.** | |

### PLAINTIFF DIMITAR KOVACHEV'S RESPONSE IN OPPOSITION TO DEFENDANT PIZZA HUT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND IN OPPOSITION TO DEFENDANT FRANCHISE MANAGEMENT INVESTORS US, LLC'S MOTION TO STAY OR, IN THE ALTERNATIVE, DISMISS

Plaintiff Dimitar Kovachev ("Plaintiff" or "Kovachev"), by his undersigned counsel, in response to Defendant Pizza Hut's Motion to Compel Arbitration and Stay Proceedings ("Motion to Compel," Dkt. No. 24), and in response to Defendant Franchise Management Investors US, LLC's Motion to Stay or, in the Alternative, Dismiss ("Motion to Stay," Dkt. No. 27), agrees to pursue his claims individually and on behalf of the other members of the proposed class ("Class") through class arbitration and to stay these proceedings pending the conclusion of that class arbitration. Plaintiff, however, opposes Pizza Hut's motion to the extent it seeks to compel Mr. Kovachev to arbitrate on an individual basis, and further opposes Franchise Management Investors US, LLC's motion to the extent it seeks to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for purportedly failing to state a claim.

## ARGUMENT

### A.     Plaintiff Consents to Class Arbitration

In 2004, Kovachev and Pizza Hut agreed to arbitrate *any* claims that arose between them. Kovachev then became a pizza delivery driver for Pizza Hut, and over the next several years, was undercompensated first by Pizza Hut, and later by Pizza Hut franchisee Franchise Management Investors US, LLC, for his vehicle expenses, causing his wages to drop below the legally required minimum. Furthermore, Pizza Hut's and Franchise Management Investors US, LLC's under compensation of delivery driver's vehicle expenses was a common practice that impacted all delivery drivers in Illinois, not just Mr. Kovachev. Accordingly, Mr. Kovachev filed the instant proposed class and collective action complaint to seek redress for Pizza Hut's and Franchise Management Investors US, LLC's illegal wage practices, on his own behalf, and on behalf of all other Illinois delivery drivers similarly situated. Pizza Hut then unearthed the 2004 agreement to arbitrate ("Arbitration Agreement"), and by its present motion, seeks to compel individual arbitration, instead of arbitration of *any* claims – among which are class and collective claims – as expressly contemplated by the parties' agreement. Although Mr. Kovachev would prefer to pursue his claims, and the claims of all others similarly situated, against Pizza Hut and Franchise Management Investors US, LLC in this Court, he is willing to proceed to arbitration in which class claims are first arbitrated against Pizza Hut, with further litigation against Franchise Management Investors US, LLC to commence before this Court after the conclusion of that arbitration. Kovachev's counsel communicated their willingness to proceed to class arbitration to Pizza Hut's counsel. Pizza Hut, however, revealing that its true intent in seeking to enforce its Arbitration Agreement is not to enable Kovachev to privately resolve his alleged claims as pleaded, but, rather, to squelch or otherwise circumvent the litigation process

2

by denying Kovachev his ability to pursue class arbitration pursuant to the American Arbitration Association's rules, has declined to stipulate that the parties proceed to class arbitration, demanding, instead, that Kovachev only arbitrate individually.

## B. The Arbitration Agreement Requires that the Arbitrator Allow Class Arbitration

Pizza Hut's Arbitration Agreement that it presently seeks to enforce requires arbitration of "*any claims* that arise between me and Pizza Hut, its related companies, and/or their current or former employees" under the "then prevailing rules of the American Arbitration Association[.]" *See* Arbitration Agreement, Dkt No. 25-1 (emphasis added); *see also id.* ("Such claims would include *any concerning compensation, employment* (including, but not limited to any claims concerning sexual harassment), or termination of employment") (emphasis added). Significantly, the Arbitration Agreement *does not* exclude class or collective claims. By agreeing to arbitrate *any claims*, Pizza Hut has agreed to class and collective arbitration, and the parties' arbitration agreement must be enforced according to its terms. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.")(internal citations omitted); *accord, Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773-74 (2010).

Here, the Arbitration Agreement is not silent on the scope of claims subject to arbitration because it requires arbitration of "any claims that arise between me and Pizza Hut, its related companies, and/or their current or former employees" specifically including "any concerning compensation [or] employment[.]" The class and collective action claims Mr. Kovachev asserts under the Fair Labor Standard Act and Illinois' minimum wage laws are claims concerning compensation or employment that have arisen among Mr. Kovachev, Pizza Hut, and its current or former employees, and are thus susceptible to class arbitration under the American Arbitration

3

Association's ("AAA") rules. Because the Arbitration Agreement broadly includes "any claims," the Arbitration Agreement allows class and collective action claims in arbitration.[1]

Furthermore, by demanding arbitration pursuant to the AAA's rules, Pizza Hut has agreed to class or collective arbitration, which those rules explicitly permit. Since October 8, 2003, more than seven months before Mr. Kovachev signed Pizza Hut's Arbitration Agreement, the AAA rules included (and continue to include) Supplementary Rules for Class Arbitrations which "apply whenever a court refers a matter pleaded as a class action to the AAA for administration[.]" *See* American Arbitration Association Supplementary Rules for Class Arbitrations, Rules Effective October 8, 2003, Fees Effective January 1, 2010, Rule 1(a), Applicability ("Supplementary Rules"; attached as Exhibit 1). The Supplementary Rules further provide that "[u]pon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award")." *Id.* at Rule 3, Construction of Arbitration Clause; *see also* American Arbitration Association Employment Arbitration Rules and Mediation Procedures, Rules Amended and Effective November 1, 2009, Fee Schedule Amended and Effective June 1, 2010, at p. 49 ("For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ('Supplementary Rules'): The AAA's Administered Fee Schedule, as listed in Section 11 of the Supplementary Rules for Class Action Arbitration, shall apply to disputes proceeding under the

---

[1] At the very least, should this Court consider the adhesion contract language ambiguous, it should be interpreted against Pizza Hut because Pizza Hut drafted the adhesive contract. *See Duldalao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d, 314, 319 (Ill. 1987) ("Ambiguous contractual language is generally construed against the drafter of the language[.]") (citations omitted); *see also AT&T Mobility*, 131 S. Ct. at 1750 (emphasizing that the arbitrators must look to "the arbitration agreement itself or some background principle of contract law that would affect its interpretation.").

Supplementary Rules."). Thus, the rules that explicitly apply to the Arbitration Agreement contemplate class arbitration.

Indeed, Pizza Hut knows that its Arbitration Agreement requires the arbitrator to construe their agreement to arbitrate any claims as an agreement that allows class arbitration through a proper Clause Construction Award. On July 26, 2007, Boris Gnezdilov, a former Pizza Hut delivery driver, filed a proposed class action complaint against Pizza Hut, Inc. in the Superior Court of California, City and County of Los Angeles, alleging, among other things, that Pizza Hut did not pay required compensation for the costs associated with maintaining and using pizza delivery drivers' personal vehicles in violation of California law. *See Borris Gnezdilov, et al. v. Pizza Hut, Inc.* Demand for Arbitration, at p. 7 (attached as Exhibit 2). Mr. Gnezdilov's proposed class claim regarding payments for vehicle expenses was the rough California analog of Mr. Kovachev's Illinois vehicle expenses class claim. After Mr. Gnezdilov filed his proposed class action complaint, Mr. Gnezdilov and Pizza Hut entered into a Stipulation and [Proposed] Order to Submit Claims to Arbitration and Stay Action that provided:

> WHEREAS, on or about December 28, 2005, Plaintiff and Pizza Hut entered into an arbitration agreement entitled "Agreement to Arbitrate";
>
> WHEREEAS, on or about July 26, 2007, Plaintiff filed this proposed class action against Pizza Hut;
>
> WHEREAS, after Pizza Hut informed Plaintiff that it planned to file a motion to compel arbitration pursuant to the parties' arbitration agreement, the parties agreed that the arbitration agreement applied to Plaintiff's claims in this action;
>
> THEREFORE, subject to the approval of this Court, the parties stipulate and agree that:
>
> (1)    Within fifteen (15) days of the date that the Court issues this order, Plaintiff will submit the claims in this action, including the request for class wide relief, to binding arbitration before the American Arbitration Association ("AAA") in accordance with the parties' arbitration agreement. Plaintiff need not a) first present the claims set forth in the complaint in full written detail to Pizza

Hut, or b) complete any Pizza Hut internal review process, or c) complete any external administrative remedy review process;

(2)     In accordance with the parties' arbitration agreement, the then-prevailing employment dispute resolution rules of the AAA, including the Supplementary Rules for Class Arbitrations, as needed, will apply to the arbitration except that Pizza Hut will pay the arbitrator's fees and that portion of the arbitration filing fee in excess of the court filing fee;

*Id.* at p.16. Thereafter, Mr. Gnezdilov's attorney filed a demand for arbitration dated November 7, 2007 with the American Arbitration Association and the *Gnezdilov, et al. v. Pizza Hut, Inc.* matter remains listed on the American Arbitration Association's Class Arbitration Case Docket. *See* www.adr.org (under "Services" drop down menu, follow "Class Arbitration Case Docket"; then search "Pizza Hut" and follow "Borris Gnezdilov, et al. v. Pizza Hut, Inc." hyperlink); *see also* Supplementary Rules, Rule 9, Confidentiality; Class Arbitration Docket ("The presumption of privacy and confidentiality in arbitration proceedings shall not apply in class arbitrations. . . . The AAA shall maintain on its Web site a Class Arbitration Docket of arbitrations filed as class arbitrations."). Just as Pizza Hut agreed that the arbitrator, and not the Court, should apply the Supplementary Rules for Class Arbitrations to Mr. Gnezdilov's vehicle reimbursement related claims that were brought on a class-wide basis, so too should Pizza Hut agree to class and collective arbitration of Mr. Kovachev's, and the class he seeks to represent, vehicle reimbursement related claims.

When interpreting similar arbitration agreements that broadly require arbitration of all employment disputes between the parties, but that do not expressly permit or prohibit class or collective actions post-*Stolt-Nielsen* and *AT&T Mobility*, AAA arbitrators have repeatedly concluded that these agreements do not prohibit class or collective actions, but, rather, allow it. *See, e.g., Colquhuon v. ChemEd Corp.*, AAA Case No. 11-160-001581-10, at *2-3 (May 6, 2011) (finding it was reasonable to conclude the employer intended to arbitrate all conceivable

employment claims, including class and collective wage-and-hour actions, where arbitration agreement covered "any and all claims"); *Sutter v. Oxford Health Plans, Inc.*, AAA 18-193-20593-02 at 7-8 (July 6, 2010) (holding that broad arbitration provision authorized class actions in arbitration, stating "[n]o civil action concerning any dispute arising under this agreement shall be instituted before any court, and all such disputes shall be submitted to final binding arbitration"); *SWLA Hospital Associates v. Corvel Corporation*, AAA 11-193-02760-06 at 16-17 (Sept. 3, 2010) (concluding that provision calling for arbitration of "any and all matters in controversy" contemplated the right to assert claims as a class); *Benson v. CSA-Credit Solutions of America, Inc.*, AAA 11-160-M-02281-08 at 6-9 (July 6, 2010) (holding use of phrase "any dispute or claim relating to or arising out of the employment relationship or the termination of the employment relationship" is broad enough to permit class arbitrations); *accord, Passow v. The Smith & Wollensky Restaurant Group, Inc.*, AAA 11-160-00357-08 at 9-10 (July 28, 2010) (concluding that arbitration provision stating that "both you and the Company mutually agree to resolve and [sic] binding arbitration any claim that, in the absence of this Agreement, would be resolved in a court of law under applicable state or federal law" allows class arbitrations); *see also Sutter v. Oxford Health Plans, LLC*, Nos. 05-2198 (GEB), 10-4903 (GEB), 2011 WL 734933, at *4-5 (D.N.J. Feb. 22, 2011) (endorsing and approving arbitrator's decision and rationale allowing class arbitration); *Smith & Wollensky Restaurant Group, Inc. v. Passow*, No. 10-11498-EFH, 2011 U.S. Dist. LEXIS 4495, at *2-3 (D.Mass. Jan. 18, 2011) (same). Indeed, the AAA's class arbitration home page explicitly states that "The AAA administers Class Arbitrations for cases where (1) the underlying agreement specifies that disputes arising out of the parties' agreement should be resolved by arbitration and (2) the agreement is silent with

respect to class claims, consolidation, or joinder of claims." *See*
http://www.adr.org/aaa/faces/services/disputeresolutionservices/arbitration/classarbitration.[2]

Here, where Pizza Hut's Arbitration Agreement references the AAA rules and applies to
*any* claims, class arbitration is appropriate.

### C. The Majority of Judges In This District Hold That An Agreement to Arbitrate Any Claims Under AAA Rules Requires that Arbitrator, and not the Court, Determine Whether Such Agreement Encompasses Class Claims

In its Memorandum of Law in Support of its Motion to Compel (Dkt. No. 25), Pizza Hut

cites two cases from this District wherein the Court found that the agreement to arbitrate at issue

allowed the Court, and not the arbitrator, to decide whether the parties' agreement allowed class

arbitration. *See Goodale v. George S. May Int'l Co.*, No. 10 C 5733, 2011 U.S. Dist. LEXIS

37111, at *7-8 (N.D. Ill. Apr. 5, 2011) (Hibbler, J.) ("The Court holds that *Stolt-Nielsen* protects

a party from being compelled to arbitrate class claims where the arbitration agreement is silent

with respect to such claims. And so the Court refers only the Plaintiffs' individual claims to the

arbiter."); *see also Corrigan v. Domestic Linen Supply Co., Inc.*, No. 12 C 0575, 2012 U.S. Dist.

LEXIS 100961, at *11-12 (N.D. Ill. July 20, 2012) (Gettlemen, J.) ("It is for courts, not

arbitrators, to decide whether class claims are able to proceed. It is the job of the courts to

interpret what parties to a contract have agreed upon, and this includes whether the parties agreed

to class arbitration. Thus, it is appropriate for the court to determine whether the parties have

agreed to class arbitration.") (internal citations to *Goodale*, 2011 U.S. Dist. LEXIS 37111, and

*Stolt-Nielsen S.A.*, 130 S. Ct at 1773, omitted).

---

[2] While the AAA describes certain types of agreements as "silent," Plaintiff does not concede that his
arbitration agreement is silent with respect to class arbitration in the *Stolt-Nielsen* sense, as the agreement
clearly encompasses *any* claims and refers to AAA rules, which, as just noted, allow class arbitration
under these circumstances.

Both *Corrigan* and *Goodale* are readily distinguishable from this case. In *Corrigan*, "both parties agree[d] that the arbitration clause is silent as to class arbitration[.]" 2012 U.S. Dist. LEXIS 100961, at *13. Similarly, the plaintiff in *Goodale* also agreed that the arbitration agreement was "silent" and insisted "that the agreement's silence mandates that the Court allow the arbitrator to determine the arbitrability of the class claims." 2011 U.S. Dist. LEXIS 37111, at *6. In this case, however, Plaintiff Kovachev does not "agree" that his agreement with Pizza Hut is "silent" as to class arbitration; rather, as demonstrated above, the Arbitration Agreement, which covers "any claims" and applies the AAA rules, includes class arbitration. *See* Section B, above.

Furthermore, at least four other judges in this District who have considered whether *Stolt-Nielsen* requires express authorization of class arbitration in the parties' agreement have "held that whether an arbitration agreement allows parties to arbitrate class claims is a procedural issue to be resolved by an arbitrator." *See Price v. NCR Corp.*, No. 12 C 3413, 2012 U.S. Dist. LEXIS 176166, at *23-24 (N.D. Ill. Dec. 10, 2012) (Castillo, J.) ("[b]ecause the question of whether the Agreement at issue here implicitly permits class arbitration is not a question of whether the Agreement is valid or whether it covers the parties' underlying dispute, it is a question of procedural arbitrability for the arbitrator to decide.") citing *Employers Insurance Co. of Wausau v. Century Indemnity Co.*, 443 F.3d 573, 577 (7th Cir. 2006) ("the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one, which the arbitrator should resolve."); *Collier v. Real Time Staffing Services, Inc.*, No. 11 C 6209, 2012 U.S. Dist. LEXIS 50548, at *5 (N.D. Ill. Apr. 11, 2012) (Lefkow, J.) (holding that whether an arbitration agreement allows parties to arbitrate class claims is a procedural issue to be resolved by an arbitrator); *see also State Farm Fire & Cas. Co. v. Zoeller Pump Co., LLC*, No. 11 C 2505, 2012

U.S. Dist. LEXIS 150874, at *4-5 (N.D. Ill. Oct. 16, 2012) (Norgle, J.) ("Whether the claims can be aggregated under the arbitration agreement is a procedural question best left to the province of the arbitrators."); *State Farm Fire & Cas.Co. v. Pentair, Inc.*, No. 11 C 6077, 2012 U.S. Dist. LEXIS 128299, at *3 (N.D. Ill. Sept. 7, 2012) (Chang, J.) (referring to an arbitrator the question of whether claims could be aggregated under the parties' arbitration agreement).

As Judge Castillo summarized, "[t]he question of whether a court or an arbitrator should determine whether an agreement authorizes class arbitration remains open at the Supreme Court level. . . . The question also remains open at the Seventh Circuit, which has not addressed the question of who should decide whether an arbitration agreement permits class arbitration when the agreement is silent on the issue. . . [and] there is no judicial consensus on the instant question within this District." *Price v. NCR Corp.*, 2012 U.S. Dist. LEXIS 176166, at *12, *21.

The question is closed, however, and in favor of allowing the arbitrator to determine whether an agreement provides for class arbitration, in the Second Circuit and the Fifth Circuit. *See Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 124, 127 (2d. Cir. 2011) ("*Stolt-Nielsen* . . . did not create a bright-line rule requiring that arbitration agreements can only be construed to permit class arbitration where they contain express provisions permitting class arbitration . . . It is clear from the terms of the arbitration agreement that Sterling required its employees to sign that the parties intended to make available in arbitration all remedies and rights that would otherwise be available in court or before a government agency. It was not unreasonable, and clearly not manifestly wrong, for the arbitrator to construe this to mean that the parties also intended to include the right to proceed as a class and seek class remedies. To read that right out of the arbitration agreement would fail to give effect to the employees' contractual rights and expectations of what the arbitration agreement provides.") (internal citations omitted); *Reed v.*

*Florida Metropolitan University, Inc.*, 681 F.3d 630, 633-634 (5th Cir. 2012) (court properly allowed arbitrator to determine whether the parties' agreement allowed for class arbitration). Especially because the parties are proceeding to arbitration solely at Defendant Pizza Hut's insistence, this Court should reject Pizza Hut's request to preclude class arbitration and instead compel the parties to arbitrate in a manner consistent with the Arbitration Agreement.

### D. Plaintiffs' Claims Against Franchise Management Investors US, LLC Should be Stayed, Not Dismissed

Seventh Circuit law clearly provides that when a matter is referred to arbitration, the matter should be stayed, and not dismissed. *See Tice v. American Airlines*, 288 F.3d 313, 318 (7th Cir. 2002). Courts should await the outcome of arbitration before dismissing a suit to save the parties the burden of additional litigation in the event that the arbitrator does not resolve all of the issues of the parties. *Id.* Additionally, the power to compel arbitration comes from Section 3 of the Federal Arbitration Act, which directs courts to stay proceedings that have been referred to arbitration until arbitration has been completed. 9 U.S.C. § 3; *see also Continental Cas. Co. v. American Nat'l. Ins. Co.*, 417 F.3d 727, 732 (7th Cir. 2005). Thus, when a court compels arbitration the court should stay the proceeding and not consider an alternative motion to dismiss claims. Plaintiff does not waive any arguments it would make in opposition to the alternative arguments made by Franchise Management Investors US, LLC regarding dismissal, and reserves the right to oppose those arguments following the conclusion of arbitration proceedings.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court compel the parties to engage in class arbitration pursuant to the terms of their Arbitration Agreement and deny Defendants' motions to the extent they are contrary to the parties' agreement to arbitrate and to the extent they seek dismissal, rather than a stay, of this litigation.

Dated: February 26, 2013                /s/ Adam J. Levitt
                                        Adam J. Levitt
                                        Edmund S. Aronowitz
                                        **GRANT & EISENHOFER P.A.**
                                        30 North LaSalle Street, Suite 1200
                                        Chicago, Illinois 60602
                                        Tel.: 312-214-0000
                                        Fax: 312-214-0001

                                        *Counsel for Plaintiff Dimitar Kovachev,*
                                        *individually and on behalf of all others*
                                        *similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2013, a copy of the foregoing was filed electronically using the Court's CM/ECF system and was further sent by electronic mail to James Coleman, counsel for Defendant Franchise Management, Inc.

Dated: February 26, 2013

*/s/ Edmund S. Aronowitz*